**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


ANTHONY FRAZIER,                :
                                :    Civil Action No. 05-3374 (JAG)
          Petitioner,           :
                                :
     v.                         :    OPINION
                                :
THOMAS SULLIVAN, Warden,         :
                                :
          Respondent.           :
```

**APPEARANCES:**

Petitioner pro se                   Counsel for Respondent
Anthony Frazier                     Paula T. Dow
South Woods State Prison            Essex County Prosecutor
215 S. Burlington Rd.               Essex County Courts Bldg.
Bridgerton, NJ 08302                Newark, NJ 07102

**GREENAWAY, JR.**, District Judge

Petitioner Anthony Frazier, a prisoner currently confined at South Woods State Prison in Bridgerton, New Jersey, has submitted a petition seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The respondent is Warden Thomas Sullivan.

For the reasons stated herein, the Petition must be dismissed without prejudice for lack of jurisdiction.

I.  BACKGROUND

Pursuant to a jury trial in the Superior Court of New Jersey, Law Division, Essex County, Petitioner was found guilty of armed robbery, unlawful possession of a handgun, and

possession of a handgun for an unlawful purpose.  Thereafter, pursuant to a negotiated plea, Petitioner pleaded guilty to receiving stolen property and additional charges of armed robbery and possession of a handgun for an unlawful purpose.  On June 27, 1991, the trial court sentenced Petitioner to an aggregate term of twenty-five years imprisonment with ten years parole ineligibility.

On October 28, 1993, the Superior Court of New Jersey, Appellate Division, affirmed.  (Answer, Ex. L.)  The Supreme Court of New Jersey denied certification on January 11, 1994.  State v. Frazier, 135 N.J. 300 (1994).  There is no suggestion in the record that Petitioner sought certiorari from the Supreme Court of the United States.

Thereafter, Petitioner filed his first state-court petition for post-conviction relief ("PCR").  (Answer, Exs. N, O.)  On April 18, 1995, the trial court denied relief.  (Answer, Ex. P.)  On July 16, 1997, the Appellate Division affirmed the denial of relief.  (Answer, Ex. S.)  On August 20, 1997, the Appellate Division denied a motion for reconsideration, without prejudice to Petitioner's right to file a second petition for post-conviction relief in the trial court based upon allegedly newly-discovered evidence.  (Answer, Ex. U.)  On February 3, 1998, the Supreme Court of New Jersey denied certification.  (Answer, Ex. V.)

On February 4, 1999, this Court received Petitioner's first federal petition seeking the issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  See Frazier v. Hendricks, Civil Action No. 99-0514 (JCL).  Petitioner asserted two claims: (1) the victim's testimony regarding Petitioner's "mugshot" and the introduction of the "mugshot" photograph into evidence deprived Petitioner of a fair trial and due process of law, and (2) the trial court's failure to give a curative or limiting instruction regarding the "mugshot" photograph deprived Petitioner of a fair trial and due process of law.  On December 30, 1999, Judge John C. Lifland of this Court entered a Memorandum and Order denying that petition on the merits.  See Frazier v. Hendricks, Civil Action No. 99-0514 (JCL), Docket Entry No. 10.  Petitioner did not appeal that decision.

Petitioner then filed a second state petition for post-conviction relief.  On August 29, 2002, after an evidentiary hearing, the trial court denied relief, finding that the allegedly newly-discovered evidence of a set-up was not, in fact, newly-discovered and that Petitioner's counsel had not failed to provide effective assistance.

> Anthony Frazier's petition for post-conviction relief (PCR) is premised on two issues - newly discovered evidence and ineffective assistance of counsel.  Mr. Frazier would have the court believe that he had information that could have affected the outcome of his trial and that all of his attorneys were privy to the information but failed to use it to acquit him.

I. The defendant claims that his entire trial was a pretext: rather than a stranger-to-stranger crime of robbery committed by him against Brian Lovejoy, the charges were fabricated to avenge his stealing of drug money. The factual basis for this proposition is premised entirely upon the testimony of Jamil Horton. Jamil Horton testified that on September 5, 1990, while playing basketball in a playground at Chancellor Avenue Annex (according to his affidavit), he overheard three guys planning to set up Mr. Frazier for a robbery because he had used drugs they had asked him to sell.

...

II. The resolution of both issues - newly discovered evidence and ineffective assistance of counsel - are premised upon the court's findings as to the following questions:

1. What Jamil Horton knew and when he knew it ...

2. When Mr. Frazier found out about Jamil Horton's information.

Mr. Frazier testified that he found out about Jamil Horton's information from his mother in 1990 while he was in Essex County Jail. The only time he spoke to Jamil Horton about his case and what he knew about it, however, was in 1997 in Rahway State Prison with a social worker present. He never spoke to Mr. Horton alone. In fact, when they spoke in the presence of the social worker, Mr. Frazier was on one side of the prison and Mr. Horton was on the other. The affidavit was prepared in the presence of the social worker, with the social worker going back and forth between the two defendants to collect information.

Mr. Frazier testified that Brian Lovejoy, the victim of the robbery for which he was convicted, was involved in a conspiracy to set him up for the robbery. He, however, testified at his trial that he did not know Brian Lovejoy because he was afraid for his life. He testified at the PCR hearing that he knew Mr. Lovejoy because he had sold drugs for Brian Lovejoy's brother's friend, Marques, once and had pocketed the money. Mr. Frazier believed that Brian Lovejoy had been coerced to testify against him by his brother.

>    ...
>
>    3.   Whether and when Jamil Horton communicated the information to Mr. Frazier and his various attorneys.
>
>    ...
>
>    4.   Whether and when Mr. Frazier communicated the information to his various attorneys.
>
>    ...

ANALYSIS

>    *Can Jamil Horton's Information Stating that the Robbery Was a Set-up be Considered Newly Discovered Evidence?*
>
>    ...

[W]hile Mr. Horton's allegations became known after the defendant's trial, the information had been available since September 5, 1990.  Mr. Horton did not formally make it known until his affidavit was written in 1997. According to his testimony he tried unsuccessfully to give the information to either the Public Defender's Office or the Prosecutor's Office.  He, however, gave the information to Anthony Frazier's mother and a girl by the name of Fatima (a/k/a Bernice or Brenda) in or around September 1990.  The information thus, pretrial, was always discoverable: all Anthony Frazier's mother or Anthony Frazier himself had to do was let his attorney know so that Mr. Horton could testify at his trial.  He testified that he gave the information to his trial attorney[, ...] making Jamil Horton's information ***not*** newly discovered.

*Were all the Attorneys Who Represented Anthony Frazier Ineffective for Failure to Use the Information Provided by Jamil Horton?*

>    ...
>
>    According to the attorneys' testimony at the PCR hearing, with the exception of Jean Hartmann who appealed Mr. Frazier's PCR and brought Jamil Horton's information to the attention of the Appellate Division as soon as she was made aware of it, none of the

> attorneys had any knowledge of Mr. Horton and the information he had. ...
>
> ... Based on the foregoing, the defendant's petition for post conviction relief is DENIED. ...

(Answer, Ex. Z, Opinion of Superior Court of New Jersey, Law Division, Essex County, dated August 29, 2002 (citations omitted).)[1] On September 24, 2004, the Appellate Division affirmed the denial of relief. (Answer, Ex. CC.) The Supreme Court of New Jersey denied certification on January 4, 2005. State v. Frazier, 182 N.J. 426 (2005).

This Petition followed. Petitioner asserts three claims for relief: (1) ineffective assistance of trial, PCR, and appellate counsel for failure to locate and present exculpatory witnesses, including Jamil Horton, Tyrone Hamilton, and/or Tyrone Jackson; (2) prosecutorial misconduct; and (3) excessive sentence.[2] The Respondent has answered, asserting, inter alia, that the Petition must be dismissed as "second or successive." Petitioner has replied, and this matter is now ready for determination.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

[2] Petitioner's discussion of this claim suggests that, in fact, he is challenging the sufficiency of the evidence.

## II.  ANALYSIS

As noted above, this is Petitioner's second federal habeas petition challenging his robbery conviction.  This fact requires this Court to consider whether this petition is "second or successive" and, thus, whether this Court lacks jurisdiction to entertain it in the absence of an Order from the Court of Appeals for the Third Circuit permitting its filing.  See 28 U.S.C. § 2244(b).

Section 2244, a provision of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides, in pertinent part:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless --
>
>     ...
>
>     (B)  (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
>         (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
>
> (3)  (A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

>      ...
>
>      (C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.
>
>      ...
>
> (4) A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section.

28 U.S.C. § 2244(b).

Thus, Section 2244(b)(3)(A) creates both procedural and substantive "gatekeeping" mechanisms for the consideration of "second or successive" habeas petitions. See Felker v. Turpin, 518 U.S. 651, 657 (1996); In re Minarik, 166 F.3d 591, 599-600 (3d Cir. 1999). However, the phrase "second or successive" is not defined.

Prior to the passage of AEDPA, federal courts "employed a collection of equitable principles known as the 'abuse of the writ' doctrine to determine when a petition would be deemed abusive and thus barred from consideration on its merits." Benchoff v. Colleran, 404 F.3d 812, 816 (3d Cir. 2005) (citing United States v. Roberson, 194 F.3d 408, 410 (3d Cir. 1999)).

Under the pre-AEDPA abuse-of-the-writ doctrine, a "successive petition" raised grounds identical to those raised and rejected on the merits on a prior petition, and was barred.

8

See <u>Sanders v. United States</u>, 373 U.S. 1, 15-17 (1963).  An "abusive" petition was one which raised claims that were available but not asserted in a prior petition or one in which the prisoner had engaged in other conduct that disentitled him to relief.  <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 445 n.6 (1986) (plurality opinion) (citing <u>Sanders</u>, 373 U.S. at 17).  <u>See also</u> <u>McCleskey v. Zant</u>, 499 U.S. 467 (1991).

The Court of Appeals for the Third Circuit has held that the gatekeeping provision of Section 2244 "replaced" the pre-AEDPA abuse-of-the-writ doctrine, but the doctrine remains viable to interpret the meaning of "second or successive."  <u>Benchoff</u>, 404 F.3d at 816-17.  However, reference to the abuse-of-the-writ doctrine does not mean, in all circumstances, that a subsequent petition must be treated as a first petition unless it amounts to a pre-AEDPA abuse of the writ.  <u>See</u>, <u>e.g.</u>, <u>Felker</u>, 518 U.S. at 667 ("The Act also codifies some of the pre-existing limits on successive petitions, and further restricts the availability of relief to habeas petitioners.").  If that were so, the substantive gatekeeping criteria of § 2244(b)(2) might never come into play.

Thus, a petition is not necessarily "second or successive" merely because it follows an earlier federal petition.  For example, where a first petition was dismissed for failure to exhaust state remedies, a subsequent federal petition is not

"second or successive." Christy v. Horn, 115 F.3d 201, 208 (3d Cir. 1997). See also Altman v. Benik, 337 F.3d 764, 766 (7th Cir. 2003) (Section 2244(b) does not bar subsequent petitions where initial petitions were dismissed "for technical or procedural deficiencies that the petitioner can cure before refiling"); Murray v. Greiner, 394 F.3d 78 (2d Cir. 2005) (same).

"If, however, a petition is resolved in a way that satisfies a petitioner's one 'full and fair opportunity to raise a [federal] collateral attack,' then it does count for purposes of § 2244(b)." Altman v. Benik, 337 F.3d at 766. Courts are in agreement that, where an initial federal petition has been denied on the merits, a subsequent petition attacking the same judgment is "second or successive" within the meaning of § 2244. See Luckett v. McDaniel, 213 F.3d 642 (9th Cir.) (unpubl.), cert. denied, 531 U.S. 891 (2000); Dunn v. Singletary, 168 F.3d 440 (11th Cir. 1999); Corraro v. United States, 152 F.3d 188, 191 (2d Cir. 1998).[3]

Here, Petitioner's initial federal habeas petition was denied on the merits. Accordingly, this Petition is "second or successive" within the meaning of § 2244 and this Court lacks

---

[3] Similarly, where a petition raises a claim that was or could have been raised in an earlier habeas petition decided on the merits, that claim clearly is "second or successive." Benchoff, 404 F.3d at 817 (citing McCleskey v. Zant, 499 U.S. 467, 493-95 (1991) and Wise v. Fulcomer, 958 F.2d 30, 34 (3d Cir. 1992)).

10

jurisdiction to entertain it, absent authorization from the Court of Appeals.

If a "second or successive" habeas petition is filed in the district court without authorization from the appropriate court of appeals, the district court may dismiss for lack of jurisdiction or transfer the petition to the court of appeals, pursuant to 28 U.S.C. § 1631.  See Robinson v. Johnson, 313 F.3d 128, 139 (3d Cir. 2002), cert. denied, 540 U.S. 826 (2003). However, because § 2244(b) is effectively "'an allocation of subject-matter jurisdiction to the court of appeals,'" Robinson v. Johnson, 313 F.3d at 140 (quoting Nunez v. United States, 96 F.3d 990, 991 (7th Cir. 1996)), a district court may dismiss such a petition only without prejudice.  See Ray v. Eyster, 132 F.3d 152, 155-56 (3d Cir. 1997).

Accordingly, this Court must determine whether transfer of this Petition to the Court of Appeals, for consideration as an application for leave to file a "second or successive" petition, would be in the interests of justice.  The only claims asserted in this Petition that arguably come within the substantive gatekeeping provisions of § 2244(b)(2) are the claims resting on allegedly "newly-discovered evidence," that is, the testimony of Jamil Horton that he overheard a plan to frame Petitioner for robbery.  As was established in the state-court proceedings, this evidence was known to Petitioner since 1990 and was reflected in

11

an affidavit prepared in 1997 (more than a year before Petitioner filed his first federal petition for writ of habeas corpus in February of 1999). Thus, it does not appear that Petitioner can establish grounds for filing a claim based upon newly-discovered evidence. See 28 U.S.C. 2244(b)(2)(B)(i).

Accordingly, it would not be in the interests of justice to transfer this Petition. This Court will dismiss the petition for lack of jurisdiction rather than transfer it. The dismissal will be without prejudice to Petitioner's filing an application under § 2244(b)(3) in the Court of Appeals.

### III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying

constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find it debatable whether this Court is correct in its procedural ruling. No certificate of appealability shall issue.

## IV.  CONCLUSION

For the reasons set forth above, the Petition must be dismissed without prejudice for lack of jurisdiction. An appropriate order follows.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: November 8, 2006

13